UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PB LUBE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLEAN HARBORS ENVIRONMENTAL SERVICES, INC. and SAFETY-KLEEN SYSTEMS, INC., <br><br> Defendants. | No. 23 C 16934 <br><br> Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM OPINION AND ORDER**

In this matter before the magistrate judge on consent (D.E. 22, 24), Defendant Safety-Kleen Systems, Inc. ("Safety-Kleen") has filed a motion to have the claims against it dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant Safety-Kleen's Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss"; D.E. 8). A motion to dismiss tests the sufficiency of a claim, not the merits of a case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018), quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The parties do not dispute that the Court

has jurisdiction over this matter on diversity of citizenship, and the two defendants in the case brought the action to federal court on removal. (D.E. 1.)

## BACKGROUND

Plaintiff PB Lube, Inc. ("Plaintiff) is an Illinois company that operates an oil-change business in Aurora, Illinois. Verified Complaint ("Complt."; D.E. 1-1) ¶ 1. Plaintiff has sued Safety-Kleen for negligence (Count I) and fraudulent misrepresentation (Count II); Defendant Clean Harbors Environmental Services, Inc. ("Clean Harbors") is sued for breach of contract (Count III). Id. ¶¶ 33-59. Safety-Kleen directs the Motion to Dismiss only at Counts I and II, while Clean Harbors has answered the complaint and has counterclaimed. (D.E. 9.) The allegations in the complaint arise from an April 3, 2022, spill of waste oil in the basement of Plaintiff's Aurora location and Plaintiff's engagement of Safety-Kleen and Clean Harbors to clean up the oil spill. Complt. ¶¶ 8-18. Plaintiff alleges that it contacted Dan Patzschke, an officer of both Clean Harbors and Safety-Kleen, which are alleged to be related companies,[1] to tackle the oil spill, and that Patzschke deployed a single vacuum truck to the oil-change business the next day to pump out the spilled oil from the basement. Id. ¶¶ 9-13. Plaintiff alleges that the truck was a Safety-Kleen truck operated by a Safety-Kleen representative. Id. ¶¶ 16-17. Plaintiff alleges that the cleanup was botched because the single vacuum truck lacked the capability to clean up a spill the size of the one at PB Lube, that the truck operator said as much to his supervisor, and that no one else from either of the defendants visited the site to assess the scope of the spill. Id. ¶¶ 14-16. Patzschke allegedly then told Plaintiff that the spill was "remediated" and that Plaintiff "could resume regular operations." Id. ¶ 18.

---

[1] Plaintiff attaches to its complaint what appear to be three invoices for the cleanup work. Complt. Ex. B (D.E. 1-2). The invoices call for payment to Clean Harbors and bear corporate logos for both Clean Harbors and Safety-Kleen, whose logo states that Safety-Kleen is "a Clean Harbors company." Id.

But, according to Plaintiff, the waste oil spill was not yet contained.

About 10 days after the spill and initial cleanup, the City of Aurora notified PB Lube that the waste oil spill had migrated into the city's storm sewers and into two nearby retention ponds. *Id.* ¶ 19. Plaintiff called Patzschke again and demanded a more comprehensive cleanup, whereupon Clean Harbors sent "field technicians" to "attend to" the waste oil spill at Plaintiff's Aurora property and presented Plaintiff with a contract for cleanup or remediation services that lasted two months. *Id.* ¶¶ 20-24. But Plaintiff alleges that at least Clean Harbors botched this stage of the cleanup as well, either because they stood idly by, were too busy to attend to the spill, and/or failed to ensure proper operation of the oil-absorption booms that were supposed to remove the oil from the retention ponds. *Id.* ¶¶ 24-29. As had happened after the initial effort to clean up the spill in the PB Lube basement, Clean Harbors eventually told Plaintiff that the wider spill was remediated, prompting PB Lube to reactivate its pump systems, whereupon PB Lube learned that oil continued to seep into the retention ponds. *Id.* ¶¶ 30-31. The City of Aurora then sent Plaintiff a bill for $15,805.28 for what the complaint describes as "emergency response services rendered on or about April 13, 2022 in connection with the discovery of oil in the retention ponds" near the oil-change business. *Id.* ¶¶ 32.

Plaintiff asserts that the foregoing events support its claim for Safety-Kleen's negligence in Count I, for which Plaintiff seeks damages "in the form of the $15,805.28 paid to the City of Aurora, devaluation of the Property due to uncontained oil seepage, reputational harm in the surrounding community as the entity responsible for environmental contamination, and for additional remediation services necessitated by Safety-Kleen's incomplete and inadequate response to PB Lube's request for cleanup services at the Property." *Id.* ¶ 42.

Plaintiff alleges the same damages for its fraudulent misrepresentation by Safety-Kleen in Count II. *Id.* ¶ 54. The fraudulent misrepresentation claim alleges that Safety-Kleen knew or should have known of the falsity of two representations that it made to Plaintiff and that Plaintiff reasonably relied upon: (1) that a single vacuum truck would be capable of cleaning up the basement waste oil spill, and (2) that after the dispatch of the single truck to the Aurora property, the waste oil spill had been "remediated" so that Plaintiff could resume its business operations. *Id.* ¶¶ 45-48. Plaintiff claims it relied on its past long-standing relationship with Patzschke and his "expertise." *Id.* ¶ 53. As for Plaintiff's allegations about Safety-Kleen's business, the complaint says that Safety-Kleen "advertises that it provides environmental services to a diverse range of businesses, including the pickup and disposal of liquids, high solids, oily water or sludge, the proper cleaning and sanitizing of machine tool sumps and removal of all associated waste, and emergency response services employing the best practices and affordable techniques for handling environmental projects in the most responsible manner." *Id.* ¶ 5.

## DISCUSSION

The Motion to Dismiss asserts that both counts against Safety-Kleen should be dismissed for failure to state a claim. As to the negligence charge in Count I, Safety-Kleen says Plaintiff seeks damages for economic losses that are not recoverable in tort under the Illinois rule of *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91 (1982). As to Count II's claim for fraudulent misrepresentation, Plaintiff says the claim fails because its alleged misrepresentations are mere statements of opinions or expectations of Safety-Kleen concerning the cleanup and because the fraud allegations are not pleaded with the requisite level of particularity under state and federal law. The Court will analyze Plaintiff's attacks on both of these counts under Illinois law insofar as the parties agree that Illinois supplies the rule of decision on these questions, citing to Illinois

law in their briefing. *Nationwide Agribusiness Ins. Co. v. USG Corp.*, No. 23 C 1988, 2024 WL 342592, at *3 (N.D. Ill. Jan. 30, 2024). As for pleading fraud with particularity, Illinois applies the same pleading standard to fraudulent misrepresentation cases as does Federal Rule of Civil Procedure 9(b). *Board of Educ. of the City of Chicago v. A, C and S, Inc.*, 131 Ill. 2d 428, 457 (1989).

**I.     Plaintiff's Negligence Claim Against Safety-Kleen Alleges Economic Damages Not Recoverable Under *Moorman*.**

Within a few relatively narrow exceptions, the well-established *Moorman* rule limits a plaintiff's recovery to contract law and excludes tort remedies for losses broadly described as disappointed commercial expectations, also termed "economic losses." Judge Pallmeyer recently described the rule this way:

> Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ...." *Id.* at 82, 61 Ill.Dec. 746, 435 N.E.2d at 449 (citation omitted). In other words, recovery in tort is barred where "the loss is rooted in disappointed contractual or commercial expectations." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) (citation and internal quotation marks omitted) (applying Illinois law), *as amended on denial of reh'g* (Apr. 3, 2003). This rule arises from the principle that "[c]ontract law serves a vital commercial function by providing sellers and buyers with the ability to define the terms of their agreements with certainty prior to a transaction," and therefore, "[w]here the duty of a seller has traditionally been defined by contract ... the theory of recovery should be limited to contract although recovery in tort would be available under traditional tort theories." *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 164, 223 Ill.Dec. 424, 679 N.E.2d 1197, 1199 (1997) (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 159–60, 201 Ill.Dec. 71, 636 N.E.2d 503, 513 (1994)).

*Nationwide Agribusiness*, 2024 WL 342592, at *4.

The *Moorman* rule has three exceptions. A claimant may recover in negligence for: (1) personal injury or property damage through "a sudden, calamitous, or dangerous occurrence," or any defect that produces "hazardous or unreasonably dangerous" consequences, and this exception

5

applies in property damage claims only where the damaged property is property other than the allegedly defective product itself, *id.* (citation omitted); (2) a defendant's intentional, false representation, *Lewis v. Lead Indus. Assn.*, 2020 IL 124107, ¶¶ 27-28; or (3) negligent misrepresentations, but only where the defendant is in the business of providing information for the guidance of others in their business transactions, *Kim v. State Farm Auto. Ins. Co.*, 2021 IL App. (1st) 200135, ¶¶ 49-50.  Most of the argument on the Motion to Dismiss concerns the applicability of *Moorman* and its first exception, insofar as Plaintiff asserts that its losses fall outside *Moorman* because they stem from damage to "other property," so that even if *Moorman* applies, Plaintiff's damages from the oil spill's contamination of the retention ponds fall under the first *Moorman* exception as a hazardous or dangerous occurrence damaging property other than Plaintiff's oil-change business.  Plaintiff's Response in Opposition to Safety-Kleen's Rule 12(b)(6) Motion to Dismiss ("Opp."; D.E. 31) at 5-11.

       The parties present a variety of Illinois and federal authorities applying *Moorman* to reach different results.  None of those cases is directly on point with this one.  The Court dispenses with the authorities holding that *Moorman* did not bar suit because the claimed property damage was to property belonging to the plaintiff.  Plaintiff, for example, relies heavily on *County of Kane v. Shell Oil Co.*, No. 04 C 8014, 2005 WL 1026583, at *3-4 (N.D. Ill. Apr. 6, 2005), in which the Illinois governmental unit of Kane County sued Shell Oil for property damage to a Kane County landfill known as Settler's Hill, where Shell deposited contaminated soil from an accident site in another county.  The *County of Kane* opinion does not say so explicitly, but it allows the reasonable inference that Kane County owned the Settler's Hill landfill,[2] and the lawsuit's allegations

---

[2] The Court takes judicial notice of the commonly known fact that Settler's Hill is and has been Kane County property.  *See* Kane County Government, Settler's Hill End Use Plan (noting that the "Settler's Hill site," where a landfill operated from 1982 to 2006, "is owned by the County") (https://www.kanecountyil.gov/Pages/settlersHill.asp.x) (last visited July 6, 2024).

included harm to county employees at the facility. *Id*. *County of Kane*'s finding that Kane County could sue Shell and its contractor in tort contamination from soil that the defendants placed in Kane County's landfill is unhelpful in analyzing whether Safety-Kleen's allegedly negligent failure to clean up the basement waste oil spill effectively at PB Lube can give rise to a tort action despite *Moorman* because the oil spill spread to other property that was not Plaintiff's property, causing the City of Aurora to invoice Plaintiff for the city's emergency response costs and causing Plaintiff to sustain additional, unspecified remediation or cleanup expenses. Similarly, the Illinois Supreme Court in the *A, C and S* matter held that the plaintiff school districts could state a negligence claim against the makers, marketers, and distributors for harm from the arguably defective or harmful asbestos-containing building products the defendants installed (or played a role in installing) in the plaintiffs' school buildings. 132 Ill. 2d at 446-51. The instant case is unlike the paradigms in *County of Kane* and *A, C and S*, in that the "other property" that was damaged here was not Plaintiff's property and occurred off of Plaintiff's real property – the damaged property (the retention ponds and storm sewers) was that of others, leaving Plaintiff to make claims for the collateral or consequential costs it says it endured from the oil's contamination of the nearby retention ponds. If, for example, the oil contamination damaged a neighboring building that PB Lube owned and operated as an office space or a corporate headquarters, or if Plaintiff had pleaded that oil spreading from the basement damaged Plaintiff's chattel, i.e., equipment or goods that came into contact with the oil spill, Plaintiff's claim for damage to "other property" would square more closely with the kind of damage for which tort recoveries are available under Illinois law notwithstanding *Moorman*. But that is not what Plaintiff has pleaded.

      Safety-Kleen's leading case, *Ganton Techs., Inc. v. Quadion Corp.*, 755 F. Supp. 203 (N.D. Ill. 1990), in which a property owner saddled with a claim for environmental contamination

7

blamed a third-party engineering firm for negligently overseeing the cleanup effort at the plaintiff's "Addison site," is more helpful. First, *Ganton* considered whether the *Moorman* doctrine applies to the allegedly negligent rendering of services, as opposed to the negligent sale of a defective product or good, and the *Ganton* court answered that question in the affirmative. *Id.* at 207-08. (The parties here do not dispute that proposition.) Second, though, the *Ganton* court relied on *Moorman* to dismiss the third-party claim against the engineering firm because the damages resulting from the negligent engineering work were "the cost which has been and may be incurred for remediation and decontamination of the Addison site." *Id.* at 208. Those damages amounted to "the cost of remedying the defective service, or consequent loss of profits from the [plaintiff's] suit," and as such, they were "clearly economic losses arising from defeated expectations of a commercial bargain." *Id.* Plaintiff's claimed damages here have a similar component, namely the ongoing remediation costs at Plaintiff's own PB Lube property, and these are purely benefit-of-the-bargain economic damages unrecoverable in tort under *Moorman*.

      Plaintiff argues that the remediation costs in *Ganton* appear to have been limited to the ongoing cleanup costs – from an earlier-occurring contamination – at the *Ganton* third-party plaintiff's "Addison site," making the instant case different from *Ganton* because the additional property damage from Safety-Kleen's negligent cleanup occurred off of Plaintiff's PB Lube property, at the retention ponds, and thus represented "other property" damage recoverable in tort. Opp. at 5-8. Plaintiff's point appears to be that its damages go beyond site remediation costs at own property (i.e., the type of damages found by *Ganton* to be unrecoverable in tort), and that the damages extended to costs arising from the oil contamination's spread to the retention ponds, which constituted "other property" so that the damages claims take and this case out of *Moorman*. Opp. at 5-8. The Court respectfully disagrees. Again, the "other property" damaged at the

retention ponds, or the storm sewers, was not Plaintiff's property. Plaintiff, then, has distinguished *Ganton*, but in a manner that makes no difference in whether Plaintiff can state a tort claim in the face of *Moorman*.

Plaintiff's claim of damages for the $15,805.28 allegedly paid to the City of Aurora fares no better under *Moorman*. These damages are alleged to have arisen from the city's having sent to Plaintiff a $15,805.28 invoice for the city's "emergency response" costs, which Plaintiff alleges to have been a consequence of the oil seepage into the ponds and sewers, and thus attributable to Safety-Kleen's botched cleanup job at PB Lube. But the Court cannot analyze the Aurora invoice as damage to "other property" in a manner neatly analogous to how courts have considered whether alleged tort damages are outside *Moorman* or inside the first of its three exceptions. Setting aside the absence of any pleaded facts showing how Plaintiff was legally obligated to pay Aurora those funds (as Plaintiff said it did, Complt. ¶ 42), the invoice is pleaded as having arisen from Aurora's undertaking of various unspecified emergency response actions, and not from the repair or replacement costs of any PB Lube property damaged by the seepage.[3] In other words, the seepage occurred and damaged the property of others, perhaps causing injury to others. Plaintiff has no standing to seek redress for those injuries and has not even alleged that sort of injury. Instead, Plaintiff's claimed injury is from having to pay the City of Aurora's invoice. But even when construing the complaint's allegations in a light most favorable to Plaintiff, the Court cannot construe the damage claim from the $15,805.28 invoice as having stemmed from damage to any property, let alone Plaintiff's property. The Aurora invoice, at best, is pleaded as a consequential cost of Safety-Kleen's failure to deliver on its bargained-for promise to clean up the waste oil spill, in the form of the emergency costs Aurora claimed to have incurred and then passed on to Plaintiff.

---

[3] The Court also considered Plaintiff's claim for the devaluation of its own property, *id.* ¶ 42, but that is a classic example of an economic damages claim not recoverable in tort under *Moorman*.

The Aurora invoice, pleaded as a consequence of the uncontained spill, is analogous to a lost profits claim, also a form of consequential damages. Plaintiff has not presented the Court with any case that supports limiting *Moorman*'s economic damages bar to permit a tort recovery for this form of consequential damage, or that supports extending the first *Moorman* exception to accommodate a claim that a municipal invoice for emergency services can be akin to recoverable damages from a sudden, hazardous, or calamitous event that causes a specific form of property damage. *Moorman* bars this species of recovery in tort. *Compare Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 153 (1986) (holding that under *Moorman*, cost of having shoddy electrical work redone, and the lost profit resulting from the work not being done properly the first time, were non-recoverable in tort as economic losses) *with Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 378-88 (1986) (holding that *Moorman* did not bar tort claim based on defective fire-warning system that led to damages from fire spreading through a warehouse and causing extensive property damages).

The Court today declines to limit *Moorman*'s economic damages bar or to extend its exception in the manner sought by Plaintiff. In addition, although Plaintiff makes a stab at keeping its negligence allegations alive by relying on the second of the three *Moorman* exceptions (intentional fraud), Opp. at 12-13, the complaint fails to state a claim for intentional fraud in any event for the reasons set forth below in Part II. Plaintiff's negligence claim against Safety-Kleen in Count I cannot escape the rule of *Moorman*, and the Motion to Dismiss is granted as to Count I.

II. **Count II's Fraudulent Misrepresentation Allegations Are Not Pleaded with the Requisite Particularity.**

Count II fails to state a claim because the fraudulent misrepresentation allegations lack the particularity required by Rule 9(b) and its applicable Illinois law analog, the long-standing

common law rule that fraud or fraudulent misrepresentation claims must be pleaded with particularity. Fed. R. Civ. P. 9(b); *A, C and S*, 132 Ill. 2d at 457. To survive a motion to dismiss, a fraudulent misrepresentation claim must plead (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance. *Id.* at 452. In addition, "the facts which constitute an alleged fraud must be pleaded with sufficient specificity, particularity and certainty to apprise the opposing party of what he is called upon to answer." *Id.* at 457. This higher standard "protect[s] against baseless complaints," "weeds out unmeritorious strike suits," and "protects defendants from the harm to their reputations that follows charges of serious wrongdoing." *Id.* Therefore, "a plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id*.

Although the complaint alleges that Plaintiff relied on the "superior knowledge and expertise" of Patzschke, Complt. ¶ 11, that Patzschke acted more or less as a point of contact for Plaintiff with Clean Harbors and/or Safety-Kleen, *id.* ¶¶ 12, 17, and that it was Patzschke who ultimately told Plaintiff that the spill had been remediated so that Plaintiff could resume its operations, *id.* ¶ 18, the particularity of Plaintiff's fraudulent misrepresentation allegations, in terms of putting Safety-Kleen on notice of what it must answer, leaves a lot to be desired. The complaint does not say specifically what Patzschke or anyone else from Safety-Kleen said about the single vacuum truck and how and why it would be sufficient to contain the spill. The complaint does not say precisely when this representation was made, where it was made, and who was present when it was made, i.e., to whom it was made. The allegation that Patzschke told Plaintiff about

11

the remediation having been accomplished is not much more particular, stating little more than that Patschke made this generalized representation to Plaintiff. *Id*. Moreover, the complaint sets forth a timeline in which (1) Plaintiff engages Safety-Kleen because it apparently knows or has dealt with Patzschke before, (2) Patzschke then dispatches the single truck without visiting the site himself to assess the spill, and then (3) Patzschke claims the spill was fully remediated when it was not, also without visiting the site. The complaint is thus bereft of factual details about precisely what Plaintiff's officers or employees (whoever they were) relied upon or how they were induced by those representations, by Patzschke or anyone else, to act in a way that could give rise to damages for intentional fraud, other than to describe the representations generally as the single vacuum truck being sufficient for the job and the remediation having been initially accomplished before the City of Aurora told Plaintiff otherwise. These allegations, without more, do not amount to a fraud stated with particularity.

As if the conclusory nature of Plaintiff's description of the fraudulent representations and reliance were not enough to warrant dismissal of Count II, the Court could not help but note Paragraph 46, in which Plaintiff alleges that "Safety-Kleen" (presumably by Patschke, although he is not identified in this passage of the complaint) "knew or should have known" that these representations (that the single vacuum truck was enough and that the spill had been remediated) were false. "Knew or should have known," of course, is not the same as "knew." These allegations leave open the possibility that Safety-Kleen, rather than making intentionally false representations in this respect, simply "should have known" but did not, rendering the misrepresentations negligent. Plaintiff does not claim that its negligence claim is based on negligent misrepresentation, and it cannot, insofar as it does not plead that Safety-Kleen was in the business of supplying information for the purpose of guiding persons in their business decisions. Count II

12

is a misrepresentation claim based on purportedly intentional fraud, but the complaint's equivocation about whether Safety-Kleen "knew" or "should have known" about the falsity of its representations further sinks Count II in view of the particularity requirement. *See Davis v. Nehf*, 14 Ill. App. 3d 318, 325-26 (1st Dist. 1973). In *Davis*, the Illinois Appellate Court rejected that very same sort of "knew or should have known" fraud allegation, which the *Davis* court called "equivocal," citing the particularity requirement and stating that "[i]t is not sufficient to allege that the party making the representation knew or should have known it to be false." *Id*. at 325.

> Fraud must be pleaded with specificity, particularly, and certainty, and must apprise the opposing party of what he is called to answer. In our view, the equivocal allegations of the counterclaim do not meet those standards. Any reasonable person responding to this counterclaim would not know whether he was charged with actual knowledge or negligence in not ascertaining the truth.

*Id.* at 326.

Plaintiff cannot maintain a fraudulent misrepresentation claim as Count II is currently constituted in the complaint, and the Motion to Dismiss is granted as to Count II.

## CONCLUSION

The Court makes no statement or judgment as to whether Plaintiff might be able to replead valid claims against Safety-Kleen, but the Court will allow it another opportunity to do so. The dismissal of the complaint as against Safety-Kleen is without prejudice. Any amended complaint by Plaintiff against Safety-Kleen must be filed by noon on July 22, 2024.

**SO ORDERED.**

                              ENTER:

                              **GABRIEL A. FUENTES**
                              **United States Magistrate Judge**

**Dated: July 8, 2024**